626 So.2d 330 (1993)
Barbara J. ENGLAND, Appellant,
v.
Robert L. ENGLAND, Appellee.
No. 92-3718.
District Court of Appeal of Florida, First District.
November 17, 1993.
*331 Gregory D. Smith and Fran L. Frick, Pensacola, for appellant.
E. Jane Brehany of Myrick, Silber & Davis, P.A., Pensacola, for appellee.
SMITH, Judge.
The wife appeals a final judgment of dissolution ending the parties' 10-year child-less marriage. Only two of the issues raised by the wife merit discussion. First, she contends the trial court erred in computing the value of the parties' major marital asset, Professional Anesthesia Services, Inc., (PAS) for purposes of equitable distribution. The trial court reduced the value of PAS, which was awarded to the husband, by 28 percent, based on expert testimony that upon a sale, this asset would suffer a 28 percent tax liability. Next, the wife contends that the trial court erred in computing the marital equity accrued during the marriage in the parties' marital home, which was owned solely by the husband prior to their marriage. Finding error in these rulings, we reverse.
When the parties married, the wife was a certified nurse anesthetist and the husband was a stockbroker. Their most successful venture was the jointly held corporation, PAS, which was formed in order to utilize the wife's specific talents. In addition, the parties accumulated several other assets during the marriage, several parcels of real estate, stocks, securities, retirement plans and vehicles. The husband formed his own financial planning corporation as well; however, it was not highly successful.
The marital home, located on Pensacola Beach, was purchased by the husband in 1976 for $40,000. He testified that in 1979, when he initiated his divorce from his first wife, the home was worth $70,000. He did not know the value of the home in 1981, when the parties married. The testimony at trial indicated that the home had a fair market value of $135,000 at the time of the filing of the petition for dissolution.
During the parties' marriage, they made improvements to the home valued at $5,450, and reduced the first mortgage by $7,645. They also paid to the husband's first wife the sum of $13,277, in part payment of an award in the amount of $15,000 awarded to her as her one-half share of the equity in the home. In the final judgment, the trial court added these payments, totalling $26,372, and determined that this sum invested in the marital home constituted a marital asset, without any allowance for increase in the amount based upon the increase in value of the home. While the evidence showed that the marital *332 home increased in value from $70,000 to $135,000 during the parties' marriage, Mr. England testified that this increase in value was due to the location of the house, which has a waterfront view and is across the street from a church and school. He testified that the waterfront view was the main source of the home's value.
In his petition for dissolution, the husband alleged that PAS, which places nurse anesthetists on a nationwide basis, was run by him, even though the corporation was his wife's idea, and that he was responsible for the marketing strategy, corporate financial concerns, and the daily managerial tasks associated with the operation of the corporation. The husband sought exclusive ownership of PAS; the wife countered that she was entitled to her equitable share of the corporation.
The evidence established that PAS, after a small initial capitalization, prospered. The parties' income averaged well over $200,000 a year during the last few years of their marriage, with most of their income coming from PAS. The evidence also showed that the wife could earn as high as a six figure income, or as low as approximately $60,000 working as a nurse anesthetist, depending upon the amount of time she wanted to work and where  whether throughout the United States or locally.
The trial court awarded the husband PAS, to which the trial court attributed a value of $234,720. The court found that PAS actually had a value of $326,000; however, the court reduced this value 28 percent based upon expert testimony that upon sale, this asset would suffer a 28 percent tax liability, resulting in a net value in the amount of $234,720. The trial court attempted to equalize the parties' assets, awarding each party assets and other sums approximating $600,000. In order to achieve the equitable distribution of assets, the court determined that it was necessary that the wife be awarded a lump sum payment of $97,158.50, which the trial court allowed the husband to make in three equal payments over a period of two years, with interest at 8 percent per annum on the unpaid balance.
On appeal, the wife contends that, because the trial court undervalued both PAS and the equity in the marital home the division was not equal, and was therefore inequitable as to her. As noted, the trial court allowed a 28 percent deduction in value of PAS, reasoning that the husband would be subject to capital gains taxes when and if the business was sold, and therefore it was appropriate to take into account and make allowances for the eventual tax consequences of this transfer. However, the wife maintains that the same is true of many of the assets distributed to the parties, which will also be subjected to capital gains tax upon the eventual sale, and that the trial court erred in reducing the value of only one asset based upon eventual capital gains tax consequences, especially in the absence of any indication that this asset was likely to be sold in the foreseeable future.
The wife concedes that the trial court is required to consider the consequences of the income tax laws on the distribution of marital assets. Nicewonder v. Nicewonder, 602 So.2d 1354, 1357 (Fla. 1st DCA 1992). However, as was explained more fully in Judge Zehmer's concurring opinion in Nicewonder, 602 So.2d at 1358, it was appropriate in that case to remand for consideration of tax consequences because of the actions of the parties during the marriage of taking deductions which deferred income tax liabilities until the date when the properties would be sold.
Similarly, in Holmes v. Holmes, 579 So.2d 769 (Fla. 2d DCA 1991), during the marriage depreciation had been taken on a condominium so that when the condominium was eventually sold, if within 5 years of the date of the amended final judgment, a substantial tax burden would be due. The appellate court ruled that both parties should be responsible for one-half of any taxes imposed upon the sale as a result of the depreciation taken by the parties between 1981 and 1988, and that this contingent tax liability was required to be taken into consideration.
The wife argues that the facts of the present case bear no similarity to those in Nicewonder and Holmes. No tax benefits such as depreciation, investment tax credits, or the like are alleged to have been taken by either of the parties from the corporation *333 during the marriage years. According to the wife, no hidden tax liabilities exist or are identified, and regardless of which party ultimately received the business, neither of them would be receiving an asset that was tax-trapped with potential tax liability.
We recognize the trial court's wide discretion to effect an equitable distribution of assets. We therefore view it as unproductive to attempt to set forth any bright-line rule as to when potential tax consequences are appropriately considered and when they are not. However, it is our view that the evidence in this case does not support the actions of the trial court in taking into consideration the potential capital gains tax consequences in determining the value of PAS for purposes of equitable distribution.
There is no dispute that PAS appreciated in value considerably during the marriage. However, there was no evidence that sale of PAS was imminent, or even contemplated, so that any recognizable capital gain would become an immediate tax liability for the husband. There was evidence, on the other hand, that businesses in the field of PAS are extremely competitive, and that the potential for business loss is considerable. Accordingly, it is equally within the realm of possibilities that PAS could either continue to appreciate in value, or lose substantial value in the years following the parties' divorce. An eventual sale might cause the owner to incur more, or possibly less, capital gains tax than the approximately $91,000 subtracted from PAS's value by the trial court's tax computations, depending on a number of factors, not the least of which would be the tax strategies and planning utilized by the owner in the interim. In sum, we find that no satisfactory rationale is offered in support of the disparate tax treatment of this asset, and we are therefore compelled to reverse based upon the lack of evidentiary predicate for the trial court's ruling.
Turning to the valuation of the equity in the parties' marital home, a trial court errs in refusing to distribute equitably the appreciated value of a marital home caused by inflation, market conditions, or improvements made on the residence during the marriage, even though the home may itself be the separate property of one spouse. Young v. Young, 606 So.2d 1267, 1270 (Fla. 1st DCA 1992). In Young, this court reiterated the rule, stated in Sanders v. Sanders, 547 So.2d 1014, 1016 (Fla. 1st DCA 1989), that once the wife establishes that marital funds or labor were used to make improvements to the home, it becomes the husband's burden to show whether any part of the enhanced value was exempt from distribution because "`unrelated to either marital party's management, oversight, or other contribution, but instead due solely to purely passive appreciation of the original asset.'" 606 So.2d at 1270.
In this case, the husband was of the opinion that it was the location of the home (the home's waterfront view), that was responsible for its significant appreciation. Obviously, however, the waterfront view was present 10 years ago when the home was valued at $70,000. We find no explanation in the record to substantiate the conclusion that this waterfront view, standing alone, causes the home to be worth $65,000 more 10 years later without regard to inflation, market conditions or the parties' improvements to the residence during their marriage. Accordingly, the court was required to take into account the appreciated value of the home in making equitable distribution of that portion of the home's value found to be a marital asset.
REVERSED and REMANDED for further proceedings consistent with this opinion.
KAHN and LAWRENCE, JJ., concur.