650 So.2d 61 (1994)
Pamela S. ADKINS, Appellant,
v.
Milton R. ADKINS, Appellee.
No. 92-577.
District Court of Appeal of Florida, Third District.
November 23, 1994.
Opinion Denying Rehearing February 15, 1995.
*62 Deborah Marks, North Miami, for appellant.
Wicker Smith Tutan O'Hara McCoy Graham & Lane and Paul H. Field, Miami, for appellee.
Before HUBBART, COPE and GODERICH, JJ.
HUBBART, Judge.
This is an appeal by the wife, Pamela S. Adkins, and a cross-appeal by the husband, Milton R. Adkins, from an amended final judgment of marriage dissolution entered after a non-jury trial. For the reasons which follow, we affirm in part and reverse in part.
The wife on the main appeal raises a multitude of points which center around two general arguments containing a large number of related subpoints. First, it is urged that the trial court erred in excluding certain assets from the marital estate, in valuing certain assets in the marital estate, and in the general equitable distribution of marital assets. Second, it is urged that the trial court erred in failing to award the wife alimony and attorney's fees. In advancing these arguments, the wife spends a major portion of her brief faulting the testimony of the husband's accountant  which the trial court admittedly accepted below rather than the contrary testimony of the wife and the wife's accountant. Except in one respect related to the marital home, however, we conclude that the wife asks us to reweigh and reevaluate the evidence in the record and to substitute our judgment for that of the trial court. We are, of course, forbidden by law from retrying the case on appeal because it is for the trial court who heard the testimony below, not this court, to evaluate and weigh the credibility of witness testimony and other evidence adduced at trial. So long as there is sufficient evidence in the record to support the trial court's findings, we are required to affirm the final judgment appealed from  even though there may be contrary evidence and reasonable inferences therefrom to support different findings which are more to the appellant's liking. Beyond that, in a marriage *63 dissolution proceeding in particular, the trial court possesses broad, but not unlimited, discretionary power to do equity between the parties and has various remedies to accomplish this purpose. So long as reasonable people may differ as to the propriety of the trial court's discretionary rulings, the appellate court may not disturb such rulings. Canakaris v. Canakaris, 382 So.2d 1197, 1202-03 (Fla. 1980); Shaw v. Shaw, 334 So.2d 13, 16 (Fla. 1976); Zalis v. Zalis, 498 So.2d 505 (Fla. 3d DCA 1986).

I
In the instant case, the parties married in 1978; it was the second marriage for both parties. There were no children born of the marriage and the husband filed for dissolution of the marriage in 1987. The trial court made the following relevant findings in the amended final judgment under review:
"The Wife is 47 years of age. She is in good health, possesses various and valuable employment skills as reflected by her personal resume, and is currently unemployed. The Husband is 63 years of age. His health is problematic although, by his admission, not disabling. He currently is attempting to reestablish a law practice in Coral Gables, Florida, with a focus on the general practice of law.
At the time of marriage, the Husband was a partner in a law firm known as Proby & Adkins, P.A., located at 299 Alhambra Circle, Coral Gables, Florida. This law practice was by all accounts a flourishing one which allowed the Husband to earn a salary in excess of One Hundred Twenty-Five Thousand Dollars ($125,000.00) per year.
Each party entered this marriage with substantial assets. The Husband has estimated his net worth to approximate Five Hundred Thousand Dollars ($500,000.00), and the Wife has estimated hers to approximate Two Hundred Fifty Thousand Dollars ($250,000.00). Among the assets owned by the Husband was his home located at 3502 Alhambra Circle, Coral Gables, Florida, its furnishings, various investment properties, and a pension plan.
During the course of marriage, the parties, by agreement, maintained separate bank accounts, separate accounting records, and separate business interests. The Wife inherited from family members, substantial assets consisting primarily of real estate and tillable farmland and having a net worth of approximately Two Million Dollars. During this marriage, the Wife managed her inherited property, churned her stock holdings profitably, and reinvested the profits of her labor in other property interests including income-producing property in North Carolina and a Shoney's Restaurant in South Carolina. At no time did the Wife share with her husband the fruits of her labor or the profits resulting therefrom. In fact, the Wife requested that the Husband reimburse her for any and all expenses she incurred from which the Husband and/or one of his assets may have derived a benefit.
The Husband worked diligently during this marriage to provide the Wife with a comfortable lifestyle. She was provided with a maid five days a week, a beautiful home, and an environment which included trips to Europe and elsewhere. In return for his labor, the Husband asked the Wife to abide by her premarital promise to provide a `nest', using the Wife's words, to be his companion and friend, and to be there when he returned from work. Instead, the Wife, for reasons unexplained, chose to lead a singular and self-gratifying lifestyle. For example, she would disappear from the home without notice or explanation for days, weeks, or even for months at a time. She hesitated to be a homemaker in any of the traditional senses. Although these responsibilities are not required by today's environment, they were the responsibilities that were promised by the Wife to the Husband and they were the reasons that he was induced to marry her in the first instance. He had hoped to marry at last and forever and expressed to his wife his need for a warm, comfortable, and stable homeplace. The Wife argues that she redecorated the home and was responsible for the addition of a porch during the course of the marriage. The Husband does not deny that the Wife practiced her *64 hobby of decorating, but does deny that such enhanced the value of his premarital asset or in any way provided a substantial contribution during the course of this marriage. The Court finds that the labors of the Wife were insubstantial and not the cause of any enhancement in value of the Husband's home. As such, the Husband's home and contents were and shall remain an asset owned solely by him free of any claim or encumbrance in favor of the Wife.
... .
The Husband agrees that he worked to create assets which can be defined as marital having a present fair market value of Three Hundred Twenty-Six Thousand Dollars ($326,000.00). These are offset, however, by marital assets created by the efforts of the Wife which have a present fair market value of Two Hundred Twenty Thousand Dollars ($220,000.00).
... .
The Court believes that it would be equitable to distribute the net marital assets of the parties, totalling One Hundred Six Thousand Dollars ($106,000.00) (calculated by subtracting the marital assets in the Wife's name of Two Hundred Twenty Thousand Dollars ($220,000.00) from the marital assets in the Husband's name of Three Hundred Twenty-Six Thousand Dollars ($326,000.00) equally with the Wife receiving Fifty-Three Thousand Dollars ($53,000.00) from the Husband.[*] The Court notes that these parties chose by their conduct to maintain separate assets, to contribute separately to their maintenance or improvement, and from the Wife's standpoint, to require the Husband to account to her and to reimburse her for any expenses which may have jointly benefitted the parties. This is a short-term marriage; there were no children born of the parties; and each party will leave the marriage with a net worth in excess of One Million Dollars. In fact, the Wife's net worth exceeds Two Million Dollars at present while the Husband's net worth is approximately One Million Three Hundred Thousand Dollars ($1,300,000.00).
* The identification and value of the marital assets that have been equitably distributed by this Court are those reflected on the schedules presented by Loretta Fabricant, CPA, at trial and referred to as Husband's Exhibits 34 A through E."

II
It would unduly burden this opinion to consider in detail all the points and subpoints asserted by the wife in her brief. Suffice it to say, however, that we carefully examined all of these arguments, together with the supporting record, and, except in one respect, conclude that the trial court's findings, rulings, and equitable distribution are supported by substantial, competent evidence and that no abuse of the trial court's discretion has been shown. We will only consider in detail what we deem the central arguments made by the wife on this appeal.

A
One of the wife's major arguments is that the trial court erred in its valuation of the husband's pension fund as a marital asset. Part of this pension fund was admittedly a non-marital asset because it was set up by the husband prior to the parties' marriage. The wife faults the trial court's valuation of the marital portion of the pension fund acquired during the marriage. She urges that the Sebastian Beach property in the pension fund was inappropriately valued at $150,000 by the husband's accountant in her testimony at trial, because the parties allegedly stipulated that this property was worth $250,000. The wife, however, gives no record citation for this stipulation, and our independent review of the record has discovered no such stipulation.
The wife also generally faults the testimony of the tracing methods used by the husband's accountant to value the marital portion of the pension fund, but fails to demonstrate why it is faulty as a matter of law so that the trial court was not privileged to accept it. The husband's accountant testified that the value of the marital portion of the pension plan was $208,000, which valuation the trial court was perfectly free to accept. This figure was generally arrived at by deducting from the plan's gross assets (a) two mortgages on two of the pension's real properties, Sebastian Beach and the Franklin *65 County Beach, and (b) the value attributable to the rollover of the husband's (Proby & Adkins) premarital pension  the Merrill Lynch trust and Security Mutual Fund  and the appreciation thereon. Moreover, the husband testified  and the trial court was therefore privileged to believe  that the trust funds in the nonmarital portion of the plan were managed by a broker without any instructions from the husband as to what or when to buy or sell. The appreciation in such funds can therefore not be considered, as urged, a marital asset. See Wright v. Wright, 505 So.2d 699 (Fla. 5th DCA 1987); compare Fredel v. Fredel, 531 So.2d 981 (Fla. 3d DCA 1988).

B
The wife also argues that the trial court erred in excluding 51 acres owned by the husband in Leon County as marital property. We cannot agree, as there was sufficient evidence adduced below to support this finding. The husband testified that the Leon County property was bought during the marriage from proceeds of the sale of various pieces of nonmarital property and not from the husband's salary. The husband's accountant also traced the funds used for the initial payment and subsequent mortgage payments on this property to the proceeds from the sale of three properties owned by the husband prior to the marriage  the Dark Hammond, Circle Six, and Volusia County properties. As with the marital home, the trial court could have chosen to believe the testimony of the husband and his accountant over that of the wife on the issue. Canakaris; Shaw.

C
The wife further argues that the trial court erred in valuing a two-story building known as the Beaufort property which was purchased by the wife during the marriage with marital funds based on her trial testimony that a major source of the downpayment for this property was derived from the sale of her premarital home. She argues that the $90,000 valuation for this building should be reduced by that portion of the downpayment which allegedly came from the sale of this nonmarital asset. The trial court, however, could have rejected the wife's testimony on this point and instead accepted the husband's contrary testimony that prior to purchasing the Beaufort property, the wife used the proceeds from the sale of her premarital home to purchase a property on Hardee Road and that, accordingly, none of these proceeds were used as a downpayment on the Beaufort property. Canakaris; Shaw.

D
With respect to the denial of wife's request for alimony, the trial court made the following relevant findings in the amended final judgment:
"The Wife has advanced a claim for the award of temporary, permanent, rehabilitative, and/or lump-sum alimony, in this cause. In support of her request, she states that she has lost her job and is presently receiving unemployment compensation as a result. While receiving unemployment compensation, the Court finds that the Wife has a net worth in excess of Two Million Dollars. In fact, while completing the weekly form work required by the Bureau of Unemployment Compensation, the Wife has managed and maintained her stock portfolio, reinvested moneys received through the sale of a small portion of real estate, effected a tax-free exchange of her South Carolina assets for investment property in North Carolina, and has acquired an interest in a Shoney's Restaurant. In short, the Wife is gainfully employed at this time, managing her substantial estate. The Court finds that the Wife fails to demonstrate the need or entitlement to receive alimony from the Husband. In fact, at no time during the long pendency of this case did the Wife request and receive alimony or support from the Husband."
Given the substantial wealth and income-producing property of the wife, the relatively high earning capacity of the wife, and the relatively short-term nature of this marriage, we see no abuse of the trial court's discretion in denying the wife's request for alimony. For the same reason, we see no abuse of discretion in the trial court's denial of attorney's *66 fees for the wife. At the very least, reasonable people may differ as to the propriety of the trial court's ruling in this respect. See § 61.08(2), Fla. Stat. (1991); Nash v. Nash, 624 So.2d 370, 371 (Fla. 3d DCA 1993); LaHuis v. LaHuis, 590 So.2d 557 (Fla. 3d DCA 1991); Antonini v. Antonini, 473 So.2d 739, 741 (Fla. 1st DCA 1985), rev. denied, 484 So.2d 7 (Fla. 1986).

E
Finally, the wife contends that the trial court erred in excluding the enhanced value of the marital home as a marital asset. We agree in part. Prior to the parties' marriage, the husband purchased the marital home for $156,000 with an original mortgage of $125,000; the husband also spent approximately $32,000 prior to the marriage in renovating the home. Clearly then, the marital home, together with its premarital improvements, was a nonmarital asset.
By statute, however, a "[m]arital asset[] include[s] ... [t]he enhancement in value and appreciation of [a] non-marital asset[] resulting either [1] from the efforts of either party during the marriage or [2] from the contribution to or expenditure thereon of marital funds or other forms of marital assets, or both." § 61.075(5)(a)(2), Fla. Stat. (1991). Although the trial court found, based on the testimony of the husband, that the wife's efforts to redecorate and remodel the marital home were insubstantial and did not enhance the value of the home, the husband and the husband's accountant both testified (1) that during the marriage the husband reduced the first mortgage on the marital home by $58,000 [from $125,000 to $72,000] and made certain improvements to the home, (2) that the payment for this debt service and improvements came from a bank account in the husband's name, and (3) that this account consisted, in part, of marital funds, to wit: the husband's earnings from his law practice, as well as certain other nonmarital funds. We conclude that by commingling these marital and nonmarital funds, this account became a marital account. Basham v. Basham, 541 So.2d 118 (Fla. 3d DCA 1989); Terreros v. Terreros, 531 So.2d 1058 (Fla. 3d DCA 1988). Accordingly, (1) the $58,000 increase in equity in the home due to the mortgage payments made by the husband from this account, and (2) the enhanced value to the home of the improvements paid for by the husband from this account must be considered a marital asset which is subject to equitable distribution. We reject the wife's contention, however, that any other appreciation to the home should also be considered a marital asset  such as the passive appreciation of the property due to the increase in land values in the area. See Straley v. Frank, 612 So.2d 610, 612 (Fla. 2d DCA 1992); Hickman v. Hickman, 572 So.2d 1021 (Fla. 2d DCA 1991).

III
We find no merit in the husband's cross appeal and deem any discussion on the point unnecessary. The amended final judgment of marriage dissolution is affirmed in all respects, save one. The trial court's exclusion of the enhanced value of the marital home due to (1) the husband's debt service on the home [i.e., a $58,000 increase in equity], during the marriage, and (2) the improvements on the home made by the husband during the marriage  both utilizing marital funds  was error as it is not based on substantial, competent evidence. Accordingly, to this limited extent, the amended final judgment under review is reversed, and the cause is remanded to the trial court with directions (1) to include the above as a part of the marital estate, and (2) to re-evaluate the equitable distribution of marital assets in view of this required adjustment.
Affirmed in part; reversed in part and remanded.

ON REHEARING
PER CURIAM.
Both the wife and husband have filed motions for rehearing. For the reasons which follow, we deny both motions.

I
First, as to the wife's motion for rehearing, it is urged that this court was in error in upholding the trial court's $150,000 valuation of the Sebastian Beach property as part of *67 the marital portion of the husband's pension fund. The wife contended in her brief that the parties stipulated at trial that the value of this property was $250,000; we found no such stipulation in the record and, accordingly, rejected the wife's point on appeal as to this property. On rehearing, the wife directs us to "the testimony found at pages 331-334 of the transcript where the net value of [the Sebastian Beach] property was admitted to be in excess of $180,000"; and, that the trial court's "value of $150,000 was not appropriate." [wife's motion for rehearing at 2]. This transcript reference is a portion of the trial testimony of the husband in which he stated that $70,000 plus interest from the current quarter was due and owing on the Sebastian Beach property, and that the tax value of the property was $250,000, but this was a gross figure only; the husband's accountant, however, testified to a more detailed breakdown of the value of the Sebastian Beach property and estimated the value of this property at $150,000. Clearly, the trial court was privileged to accept the testimony of the husband's accountant and value the Sebastian Beach property at $150,000. Canakaris; Shaw. In any event, there was no stipulation by the parties, as urged, that the value of this property was $250,000 or $180,000 at any time during the trial; our original opinion in this respect was entirely correct.
Second, the wife urges that this court was in error in upholding the trial court's exclusion of the Leon County property owned by the husband from marital property. It is urged that "the [husband's] accountant admitted that her `tracing' was from a cash flow into and out of an account which co-mingled non-marital assets with the income from the [h]usband's law practice" from which, it is claimed, the Leon County property was purchased [wife's motion for rehearing at 2]. We are cited to no portion of the accountant's testimony where such alleged admission was made, and our independent review of this testimony reveals just the opposite; the accountant traced the funds used for the initial payment and subsequent mortgage payments exclusively from the sale of three properties owned by the husband prior to the marriage, as we indicated in our original opinion. Moreover, the husband expressly testified that this property was bought from the proceeds of the sale of the above-stated non-marital property, and not, as the wife claims, from the husband's salary. Clearly, the trial court was privileged to accept the testimony of the husband and the husband's accountant and find that the Leon County property was non-marital property, Canakaris; Shaw; no error has been shown on this point.
Finally, the wife urges that our decision, which excludes from marital property any passive appreciation of the marital home [a non-marital asset] due to an increase in land values in the area, conflicts with decisions of the First and Fifth District Courts of Appeal. We disagree. Clearly, the wife is entitled, as we have held, to the enhancement in value of the marital home due to the mortgage reduction and improvements on the home paid for by the husband during the marriage with marital funds, but not to a passive appreciation of the home unrelated to these payments. Indeed, Section 61.075(5)(a)(2), Florida Statutes (1991), expressly provides that a marital asset includes "[t]he enhancement in value and appreciation of [a] non-marital asset[] resulting ... from the contribution to or expenditure thereon of marital funds ...;" there is no provision, however, for purely passive appreciation of such non-marital property unrelated to such expenditures of marital funds. As we read the cases on this point, the law in Florida is precisely to that effect. See, e.g., Straley v. Frank, 612 So.2d 610, 612 (Fla. 2d DCA 1992) ("[T]he trial court erred in characterizing the passive appreciation in market value of [the husband's] interest in non-marital real estate partnerships ... as a marital asset... . In this case, any increase in market value did not result from the expenditure of marital funds or from marital efforts, but resulted from `inflation or fortuitous market forces'... . The appreciation in value of these two partnerships as a result of the infusion of marital funds was the amount by which [the husband's] share of the mortgage debt on [the non-marital partnerships] was reduced during marriage."), rev. denied, 624 So.2d 265 (Fla. 1993); Sanders v. Sanders, 547 So.2d 1014, 1016 (Fla. 1st DCA 1989) ("The court *68 [erroneously] failed to apportion the enhanced value of the farm [a non-marital asset] so as to exempt from the distribution plan only that part, if any, of the enhanced value shown by the evidence before the court to be unrelated to either marital party's management, oversight, or other contribution, but instead due solely to purely passive appreciation of the original asset.").
We agree, however, that "[o]nce [as here] the [non-owner spouse] establishe[s] that marital funds or labor were used to make the improvements to the home [a non-marital asset], it [becomes] the [owner spouse's] burden to show whether any part of the enhanced value was exempt from distribution [as a marital asset] because `unrelated to either party's management, oversight, or other contribution, but instead due solely to purely passive appreciation of the original asset.'" Young v. Young, 606 So.2d 1267, 1270 (Fla. 1st DCA 1992); see also England v. England, 626 So.2d 330, 333 (Fla. 1st DCA 1993) (quoting from Sanders, 547 So.2d at 1016).[1] In the instant case, it will therefore be the husband's burden on remand to show what part, if any, of the market value increase in the marital home, after improvements were made to the home, was due solely to passive appreciation of the home resulting from an increase in land values in the area; indeed, the husband's accountant testified at trial that the increase in the value of the marital home was due primarily to precisely such passive appreciation. As we have previously held in accord with established Florida law, such passive appreciation is not a marital asset under Section 61.075(5)(a)(2), Florida Statutes (1991).

II
The husband's motion for rehearing reiterates the points previously raised on his cross appeal, and, in addition, requests an advisory opinion as to when interest should run on the judgment in this case. We again reject the points on the cross appeal and decline to address the interest issue as it was not raised by either party as a point on appeal. We further decline to certify inter-district conflict in this case, as requested by the wife.
NOTES
[1] We recognize that in Moon v. Moon, 594 So.2d 819, 822 (Fla. 1st DCA 1992) (followed in Becker v. Becker, 639 So.2d 1082, 1084 (Fla. 5th DCA 1994)), the court stated that if the value of a premarital asset was enhanced by marital funds or labor, "then the enhanced value of the premarital asset becomes a marital asset and further enhancement in value of such asset due to inflation or market conditions will become a marital asset." Subsequent to Moon, however, the First District has clarified this point and made it plain that if the owner of the premarital asset establishes that some or all of the increase in value of the said asset was due to passive appreciation of the asset unrelated to marital funds or labor, such passive appreciation cannot be considered a marital asset. Young; England.