658 So.2d 148 (1995)
Thomas E. DYER, Appellant,
v.
Lisa DYER, Appellee.
No. 94-2108.
District Court of Appeal of Florida, Fourth District.
July 12, 1995.
Ronald E. D'Anna of Mattlin & McClosky, Boca Raton, for appellant.
James D. Tittle of Beverly & Tittle, P.A., West Palm Beach, for appellee.
FARMER, Judge.
In this appeal, we are asked to decide whether a trial court can require that a custodial parent and minor child be allowed, as a form of child support, to live in a house owned solely by the non-custodial parent. We answer the question in the affirmative but reverse for other considerations.
The final judgment dissolving the marriage of the parties describes the husband as living primarily off the largess of his father. The facts established that his father gave the husband a house for the parties to use as their residence, with title in the husband's name. At one time there was a recorded mortgage on the house to his parents, but no payments were ever made on the mortgage. It was satisfied of record in March 1992, at which point the husband had title free and clear of liens and encumbrances. Shortly before the divorce proceedings were begun, however, the husband executed an unrecorded mortgage on the house in favor of a family trust, purporting to evidence a debt of $160,000. The husband received no proceeds of any loan and claims that he gave the mortgage to secure a "moral obligation."
The judge found that the husband had earned little since the parties married in the mid-1980s and had not even filed tax returns since 1990. An expert testified that the monthly living expenses of the parties averaged $2,612, and the evidence showed that his father paid more than $66,000 of their household expenses from 1989 through 1992. The wife worked continuously during the *149 marriage but never earned much more than $17,000 in any year. The husband supplemented her income with "minimum employment in addition to receiving goodly sums of money from his father."
The final judgment found that the house was not a marital asset subject to equitable distribution, and that it was his separate property, unconnected to the marriage. It found that the recent mortgage to his father's family trust lacked consideration, that it was "a paper debt of no substance," and that it was "essentially a ruse to keep [wife] from asserting any claim" to the property. Finding that the house was "the only residence that the minor child has known, [and that] the child should not be removed from the home," the court ordered that the wife have the exclusive use and occupancy of the house and that, "as additional child support," he should pay "the [e.s.-sic] mortgage, taxes, insurance, homeowners association fees and other similar expenses" of the house.
As to child support, the court made the following specific findings: his monthly income $1,200;[1] her income $1,123; total combined income $2,323; his percentage of combined income 52%; guidelines recommendation $510; day care cost $284; husband's share $413; and wife's share $381. Thus, the court ordered him to pay monthly child support of $413. The court also found that neither party had the ability to pay alimony and that their joint income over the years would not support an award of alimony, and the facts did not support rehabilitative alimony. He appeals; she does not.
His principal issue on appeal is that the wife should not have been given the exclusive use and occupancy of the house because the court found it to be his separate property by a non-interspousal gift. See § 61.075(5)(b)(2), Fla. Stat. (1993). Essentially he contends that his separate property from outside the marriage "is not available for disposition in a dissolution proceeding." He asks that we answer the question we left unanswered in Gregg v. Gregg, 623 So.2d 831 (Fla. 4th DCA 1993), by concluding that the court may not so dispose of one party's personal assets.
Section 61.075(1), Florida Statutes (1993), provides that:
"the court shall set apart to each spouse that spouse's nonmarital assets * * *, and in distributing the marital assets * * * between the parties, the court must begin with the premise that the distribution should be equal * * *"
In this regard, we understand the equitable distribution statute to use the term "distribution" to mean a transfer of title and ownership from the marital parties jointly to only one of the parties. Hence, if by this argument he contends that the court has no power under the statute to dispose of his separate property to her purely as a matter of dividing marital property, we think he is correct.
If, on the other hand, he means that the court could not order him to let the other parent use his separate property for the care of the minor child of the parties, we disagree. Section 61.30(13), Florida Statutes (1993), provides that "[i]f the recurring income is not sufficient to meet the needs of the child, the court may order child support to be paid from nonrecurring income or assets." [e.s.] The husband conceded at oral argument that post-dissolution employment earnings of a former spouse are non-marital, separate property; yet the court may require the former spouse to pay a specified part of such earnings for child support. The statute allows no basis to distinguish between ordering a parent to pay personal funds for child support, on the one hand, and ordering a parent to set aside singularly owned property (real or personal) to function as support of a minor child.
The problem in this case is that the trial judge seems to have intended that the house be used as child support, but has not *150 factored its value into the child support package. We have set out his findings as to earnings and the amount to be paid as child support, and we will not repeat them here. At the same time, however, the judge has also specifically designated required payments of mortgage, taxes, insurance, etc., on the house as child support. He has not set out the amount of these required "child support" payments, and thus we have no way of knowing the dollar amount of the use of an asset in the nature of child support and the court-ordered payments.
Section 61.30(1)(a) presumptively establishes the amount of child support the court may order a parent to pay. It then goes on to state:
"The trier of fact may order payment of child support in an amount which varies more than 5 percent from such guideline amount only upon a written finding, or a specific finding on the record, explaining why ordering payment of such guideline amount would be unjust or inappropriate."
In order to harmonize subsection (1)(a) with subsection (13) of section 61.30, it seems necessary to us for the judge to know the value of the non-marital asset that the judge is employing for support purposes: i.e., the amount of these payments of mortgage, taxes, insurance, etc. Otherwise, the judge will be unable to calculate the extent of any departure from the guidelines. Here, for example, the court has not made written or specific findings as to why the recurring income of the husband "is not sufficient to meet the needs of the child," and thus he apparently did not address whether the guideline amount "would be unjust or inappropriate." In short, we are simply unable to review in any meaningful way the court's award of use and occupancy of his house to her.
We stress that we do not intend by our holding today to suggest that the court cannot provide for the mother's use of the father's separately owned house as a form of child support. Nor do we conclude that the court may not also require that he pay the mortgage, taxes, insurance, etc., on the house, so that she can live there with the child. On remand the court need simply provide us with the missing information and findings relevant to subsections (1)(a) and (13), so that we may then properly exercise our review function.
REVERSED AND REMANDED WITH INSTRUCTIONS.
GUNTHER, C.J., and KLEIN, J., concur.
NOTES
[1] In a related finding, the court found that his "net income, based on actual and imputed earnings, is $1,200." The judge did not specify how much of the earnings is actual and how much is imputed. As we are remanding for further findings on other issues, we also direct the court to specify how much of his earnings is actual and how much gross earnings are imputed. Moss v. Moss, 636 So.2d 164 (Fla. 4th DCA 1994).