804 So.2d 513 (2001)
Walter M. JAHNKE, Appellant,
v.
Debra A. JAHNKE, Appellee.
Nos. 3D01-1316, 3D01-108, 3D01-738.
District Court of Appeal of Florida, Third District.
December 26, 2001.
Rehearing Denied February 1, 2002.
*514 Judith H. Hayes, Miami, for appellant.
*515 Murphy & O'Brien and William F. Murphy, III, Miami, for appellee.
Before JORGENSON, FLETCHER, and RAMIREZ, JJ.
PER CURIAM.
In these consolidated appeals, the former husband appeals from a post-dissolution final judgment on financial issues, an order of distribution concerning a management savings plan, and an amended order of distribution in the form of a qualified domestic relations order (QDRO) distributing the savings plan. We affirm in part and reverse in part.
The parties were married in November 1977. During the marriage the former husband was employed with BellSouth and maintained a pension plan and management savings plan. Prior to the marriage, the former husband purchased the home in which the parties lived until the date of their separation. The parties separated in 1993.
The former husband filed a petition to dissolve the marriage in 1994. As a result of mediation, the parties entered into a settlement agreement in 1996 in which they agreed, among other things, that the former husband would pay the former wife $56,000 in the form of BellSouth stock. The court subsequently entered a final judgment of dissolution of marriage on February 14, 1996, incorporating the settlement agreement.
The former wife then filed a petition, and a second amended petition, to set aside the final judgment due to the former husband's failure to disclose the existence of his BellSouth Management Savings Plan having a balance of $73,773.47. The trial court granted the former wife's second amended petition to set aside the judgment and found that the settlement included in the original final judgment had been reached under fraud, deceit and misrepresentation. An appeal followed and this court affirmed. See Jahnke v. Jahnke, 730 So.2d 688 (Fla. 3d DCA 1999).
Thereafter, a hearing was held and the trial court entered a "Final Judgment on Financial Issues." The trial court established the value of the parties' assets as of the date of the final hearing in 2000. The trial court also awarded alimony to the former wife and determined that she was entitled to attorney's fees from the former husband. The trial court credited the former husband with the $80,894.87 he had previously paid to the former wife pursuant to the settlement agreement. The trial court also awarded the former wife 47% of the enhanced value of the home that was purchased by the former husband before the marriage, one-half of the pension plan, and one-half of the management savings plan. The former wife was awarded $1,500 per month in permanent periodic alimony for the twenty-three months from the parties' separation to the date of the former wife's remarriage. The former husband appeals from this final judgment in case number 01-108.
The former wife then filed a petition seeking immediate distribution of the portion of the management savings plan awarded to her by the final judgment on financial issues. The trial court granted the petition and entered an order of distribution. The former husband appeals from that order in case number 01-738. Because the order of distribution did not qualify as a QDRO, the trial court entered an amended order of distribution. The husband appeals from that order in case number 01-1316.
The former husband raises numerous issues; we address only those which merit discussion.

*516 I
The former husband first argues that the trial court erred in awarding relief not requested in the former wife's petition to set aside a judgment based on fraud, deceit or misrepresentation. We disagree. "When a court vacates a judgment pursuant to a rule 1.540 motion, the effect of that ruling is to return the case and the parties to the same position that they were in before the court entered the judgment." Bane v. Bane, 775 So.2d 938, 941 (Fla. 2000). A rule 1.540 motion is a motion filed in the underlying proceeding. Id. The part of the final judgment pertaining to financial issues became void when the court set it aside. We agree with the former husband that a court cannot award relief that was not requested in the pleadings. See Hines v. Hines, 494 So.2d 297 (Fla. 3d DCA 1986); Hernandez v. Hernandez, 444 So.2d 35 (Fla. 3d DCA 1984); McDonald v. McDonald, 732 So.2d 505 (Fla. 4th DCA 1999). However, the former wife's rule 1.540 motion was not a "pleading." See Fla. R. Civ. P. 1.110. The only relevant pleading is the former wife's counterpetition for dissolution of marriage, which she filed in 1994. In her counterpetition, the former wife requested distribution of all the items included in the final judgment on review, except the management savings plan, which was the basis for the wife's petition to set aside the original final judgment. Therefore, the former wife had specifically sought the relief granted.

II
The former husband next contends that the trial court erred in valuing the assets as of the 2000 hearing, rather than the date of dissolution. The trial court determined that the former husband caused the delay in the distribution of marital assets through his deceit, which warranted valuation of the assets as of the date of the 2000 hearing, rather than the 1996 settlement. Although assets should not, ordinarily, be valued as of a post-dissolution date because the subsequent change in the property's value due to non-marital labor or efforts cannot be distributed, see Claughton v. Claughton, 625 So.2d 853, 855 (Fla. 3d DCA 1993), we find no abuse of discretion in the trial court's decision to choose the latter date. See § 61.075(6), Fla. Stat. (1999) ("The date for determining value of assets and the amount of liabilities identified or classified as marital is the date or dates as the judge determines is just and equitable under the circumstances."); Perlmutter v. Perlmutter, 523 So.2d 594 (Fla. 4th DCA 1987) (holding that because asset values often change drastically during course of dissolution proceedings, the determination of appropriate date for valuation must be made on a case by case basis and in light of the surrounding circumstances); see also Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980) (holding that in making financial awards in dissolution proceedings, the trial court possesses broad discretionary authority to do equity between the parties). The former wife had an interest in the marital part of the assets, and any passive accumulations thereon, through the year 2000. To value the assets as of 1996 would reward the former husband for his deceit with the full market appreciation of the marital portion of the assets between 1996 and 2000, while depriving the former wife of the appreciation of her interest in the assets. See Perlmutter, 523 So.2d at 596.

III
The former husband next argues that the trial court erred in awarding one half of the pension and management savings plans ("the plans") because portions of each were nonmarital. Pension plan *517 contributions during the course of the marriage, and accumulations thereon, are marital property. See Griffiths v. Griffiths, 563 So.2d 773 (Fla. 3d DCA 1990). As the trial court acknowledged in the final judgment, passive accumulations on the nonmarital portions of an asset are not subject to equitable distribution. See Blase v. Blase, 704 So.2d 741 (Fla. 4th DCA 1998); Hargrave v. Hargrave, 728 So.2d 366 (Fla. 4th DCA 1999); Bain v. Bain, 553 So.2d 1389, 1391 (Fla. 5th DCA 1990); see also § 61.075(5)(a)2, Fla. Stat (1997).
Notwithstanding, "[w]ith regard to the designation as marital or nonmarital, `[t]he burden of proof is on the spouse who wishes to show that an asset or liability acquired during the marriage is not ... marital....'" Gladstone v. Gladstone, 733 So.2d 1090 (Fla. 4th DCA 1999) (quoting Deas v. Deas, 592 So.2d 1221, 1222 (Fla. 1st DCA 1992)); Childers v. Childers, 640 So.2d 108 (Fla. 4th DCA 1994) (holding that the owner of the asset had the burden to show whether some portion of his pension benefits accrued prior to marriage and should not be included as marital asset); cf. Adkins v. Adkins, 650 So.2d 61 (Fla. 3d DCA 1994) (holding that once a non-owner spouse establishes that marital labor or funds were used to make improvements to a home which was nonmarital, it becomes the owner spouse's burden to show which parts are exempt). "Absent any proof of premarital contributions to the plan, the trial court can treat the whole amount as a marital asset.... [T]he owner must prove the value of the premarital contributions (and appreciation of that value, if any)." Reyher v. Reyher, 495 So.2d 797 (Fla. 2d DCA 1986). The former husband failed to adduce competent substantial evidence of the nonmarital value of the plans. The trial court, as finder of fact, was within its discretion to discredit the former husband's assertion that the information necessary to deduct nonmarital portions of the pension and management savings plan was unavailable. We therefore affirm that award.

IV
The former husband next challenges the trial court's calculation of his special equity in the home and the award of interest on the home. The trial court found that the home was a nonmarital asset, the value of which was substantially enhanced by marital contributions. See Adkins v. Adkins, 650 So.2d 61 (Fla. 3d DCA 1994) (holding that the enhanced value of the home is a marital asset to be equitably distributed by the court). The trial court found that the home was encumbered by two mortgages, the original mortgage, the balance of which was $15,800, and a second mortgage incurred during the marriage, the balance of which was $20,000. Yet, in calculating the former husband's special equity using the Landay formula, the trial court subtracted half of the $20,000 mortgage, but neglected to subtract half of the $15,800 mortgage. See Landay v. Landay, 429 So.2d 1197 (Fla.1983); Griffiths v. Griffiths, 563 So.2d 773 (Fla. 3d DCA 1990). Therefore, we vacate that part of the judgment which pertains to the home and remand for the trial court to either explain the inconsistency based on record evidence or recalculate the former husband's special equity. Moreover, as the former wife concedes, she is not entitled to interest on the value of the home since 1996, as the trial court has already valued the home as of 2000. Accordingly, the award of interest is also vacated.

V
We find no abuse of discretion in the trial court's decision to order lump sum distribution of the management savings *518 plan by way of a QDRO. Contrary to the former husband's assertions, the final judgment, which provides that the trial court "reserves jurisdiction ... to implement, enforce, and/or modify this final judgment," sufficiently reserves jurisdiction to enter a post-judgment QDRO.
We also disagree with the former husband's contention that the trial court, in ordering the distribution of the management savings plan by way of a QDRO, failed to discount the plan to present value. The value of the management savings plan was, in fact, calculated at present value. The former husband's employer distributed one half of the management savings plan's value as of September 28, 2000, not according to any calculation of its value on some future date. The cases cited by the former husband, Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla.1986), Boyett v. Boyett, 703 So.2d 451 (Fla.1997), and DeLoach v. DeLoach, 590 So.2d 956 (Fla. 1st DCA), all pertain to pensions which involve future rights. Unlike a pension, the management savings plan is a sum certain and is subject to immediate distribution. Therefore, we affirm the distribution order in case number 01-1316. Case number 01-738 is dismissed as moot because the order appealed in that case was replaced by the trial court's amended order, which the former husband appealed in case number 01-1316.

VI
We vacate the award of retroactive permanent periodic alimony because the trial court failed to make the proper factual findings justifying the former wife's need for permanent periodic alimony. See § 61.08, Fla. Stat. (1997) (providing that "[i]n determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors," listed therein (emphasis added)); Chapoteau v. Chapoteau, 659 So.2d 1381, 1385 (Fla. 3d DCA 1995); Parenteau v. Parenteau, 795 So.2d 1124, 1125 (Fla. 5th DCA 2001) (holding that "failure to make the specific findings requires reversal"). The trial court found that the husband's income during the relevant time period was approximately $50,000 per year, and that he had the ability to pay periodic alimony. The court also found that the former wife had scant employment experience, having worked only six months during the marriage, with no vocational training, and no job skills. However, the final judgment contains no mention of any of the other statutory factors listed in section 61.08. We accordingly vacate the alimony award and remand to the trial court to make proper findings and to justify the amount awarded. The former husband's claim for child support, and the wife's claim for the rental value of the home while the former husband lived there are intertwined with the alimony issue and should be revisited on remand as well.

VII
The trial court properly awarded attorney's fees and costs based on competent substantial evidence of the former wife's need, the former husband's ability to pay, and the fact that the post-dissolution litigation was necessitated by the former husband's concealment of the management savings plan. See Bane v. Bane, 775 So.2d 938, 940 n. 3 (Fla.2000); Bitterman v. Bitterman, 714 So.2d 356, 365 (Fla.1998).
We find no merit in the remaining issues raised. Accordingly, the judgment is
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.