895 So.2d 1171 (2005)
Miguel HERRERA, Appellant/Cross-appellee,
v.
Brenda HERRERA, Appellee/Cross-appellant.
No. 3D03-3007.
District Court of Appeal of Florida, Third District.
February 16, 2005.
Rehearing Denied April 8, 2005.
*1173 Greene, Smith & Associates and Cynthia L. Greene, Miami; Markus & Winter, Miami, for appellant/cross-appellee.
Keith W. Saks; Slesnick & Casey and James C. Casey, Coral Gables, for appellee/cross-appellant.
Before SHEPHERD, CORTINAS, and ROTHENBERG, JJ.
CORTINAS, Judge.
The former husband, Miguel Herrera, appeals and the former wife, Brenda Herrera, cross-appeals from a final judgment of dissolution of marriage. We affirm, in part; reverse, in part, and remand.
The former wife, a Registered Nurse, met the former husband, an emergency room doctor, while working at Baptist Hospital. The parties were engaged in 1993. On February 11, 1994, while the former wife was pregnant with the parties' first child, the parties executed a prenuptial agreement and were subsequently married on February 19, 1994. During the marriage, the former wife stayed home and cared for the parties' three minor children.
On April 15, 2002, the parties separated, and on September 23, 2002, the former husband filed a Petition for Dissolution of Marriage. The former wife filed a counter-petition seeking dissolution and affirmative relief in the form of reformation, rescission or modification of the prenuptial agreement. The former wife asserted that the agreement was obtained by the former husband as a result of undue influence, coercion, threat, duress, and intimidation. The former wife also alleged that the prenuptial agreement was unfair, lacked mutuality, and did not contemplate or make provisions for the eventuality of children being born of the marriage.
On September 18 and September 26, 2003, a trial was conducted. On October 8, 2003, the trial court entered final judgment finding that the former wife entered into the prenuptial agreement freely, knowingly, and voluntarily. The final judgment awarded each party $305,041 in equitable distribution of assets, including the enhanced value of the former husband's premarital home. It also named the former wife as the primary residential parent of the three minor children, awarded the former wife exclusive use and possession of the premarital home until the youngest child reaches the age of majority, awarded the former wife monthly child support of $3,208, and ordered rehabilitative alimony of $1,000 per month for twelve months pursuant to the terms of the prenuptial agreement. The former husband appeals, and the former wife cross-appeals.
The former husband contends that the trial court abused its discretion by finding that his premarital home had enhanced in value by $100,000 and that such enhancement was a marital asset. We disagree.
Section 61.075(5)(a)(2), Florida Statutes (2002), provides, in pertinent part, that "Marital assets" include "[t]he enhancement in value and appreciation of nonmarital assets resulting ... from the contribution to or expenditure thereon of marital funds or other forms of marital assets or both."
*1174 In the instant case, the trial court found that the former husband's premarital home had enhanced in value by $100,000. Contrary to the former husband's assertion, this finding is supported by competent, substantial evidence where the former wife testified that the former husband expended $90,000 in marital funds to pay off the existing mortgage on said property and built an addition, a den, onto the premarital home. See Adkins v. Adkins, 650 So.2d 61, 67 (Fla. 3d DCA 1994); see also Gaetani-Slade v. Slade, 852 So.2d 343, 346 (Fla. 1st DCA 2003). Further, the former husband failed to meet his burden of showing that the funds used for these expenditures were non-marital. Jahnke v. Jahnke, 804 So.2d 513, 517 (Fla. 3d DCA 2001); Adkins, 650 So.2d at 68. Consequently, the resulting increased equity in the property is a marital asset subject to equitable distribution. Perrin v. Perrin, 795 So.2d 1023 (Fla. 2d DCA 2001); Cornette v. Cornette, 704 So.2d 667, 668 (Fla. 2d DCA 1998). A review of the equitable distribution detailed in the final judgment shows that the trial court properly divided the increased equity in the value of the former husband's premarital home equally between the parties. Accordingly, we affirm the equitable distribution award.
Next, the former husband contends that the trial court erred by granting the former wife exclusive use and possession of the former husband's premarital home until the youngest child reaches the age of majority. We agree.
The trial court granted the former wife exclusive use and possession of the former husband's home under the section of the order dealing with equitable distribution. However, Section 61.075(5)(b), Florida Statutes (2002), defines "Nonmarital assets," in part, as "[a]ssets acquired ... prior to the marriage...." A non-marital asset may not be conveyed to a non-owner spouse as equitable distribution absent an agreement. Mitchell v. Mitchell, 841 So.2d 564 (Fla. 2d DCA), review denied, 846 So.2d 1148 (Fla.2003); Belmont v. Belmont, 761 So.2d 406 (Fla. 2d DCA 2000). Thus, because the former husband acquired title to the home prior to the marriage and kept it titled in his name, the non-marital property was not subject to equitable distribution.
To the extent that the trial court may have awarded the former wife exclusive use and possession of the former husband's home as an incident of the other party's child support obligation, the trial court did not make the necessary findings to support such an award. When considering non-marital real property, a court may not award exclusive possession of such property to the other spouse absent a finding pursuant to section 61.30(13), Florida Statutes (2002), that the non-custodial parent's recurring income is insufficient to meet his child support obligation. Mitchell v. Mitchell, 841 So.2d 564, 569 (Fla. 2d DCA 2003); Dyer v. Dyer, 658 So.2d 148, 149 (Fla. 4th DCA 1995). Accordingly, we reverse the award of exclusive use and possession of the premarital home to the former wife.
In his last issue on appeal, the former husband alleges several errors with regard to the calculation of child support. The first alleged error is rendered moot by the reversal of the award of exclusive use and possession of the former husband's premarital home to the former wife. Next, the former husband challenges the award of "child care costs" for items described in the former wife's financial affidavit, such as babysitters, aftercare, and summer camp. We find that this award was error where the trial court failed to make the proper statutory findings that *1175 these costs were attributable to "employment, job search, or education calculated to result in employment or enhance income of current employment of either parent," pursuant to section 61.30(7), Florida Statutes (2002). Accordingly, we reverse and remand for reconsideration of these costs under the statute.
Lastly, the former husband contends that the trial court abused its discretion by requiring him to pay private school tuition in addition to his guideline child support obligation without making express factual findings supporting the departure. We disagree.
A court may order the parents to pay for private school tuition where they have the ability to pay, and such attendance is in the child's best interest, if they agree that such attendance is within their customary standard of living. Forrest v. Ron, 821 So.2d 1163, 1166 (Fla. 3d DCA 2002). In this case, it is undisputed that the parties agreed to provide private school for their children until completion of either the second or third grade. Whether they agreed on private school until the completion of the second grade as opposed to completion of the third grade is a question of credibility, and we hold that the trial court did not abuse its discretion in finding that the parties agreed to private school until each child completes the third grade. Therefore, we affirm this portion of the child support obligation.
On cross-appeal, the former wife raises three issues. We find that all of them lack merit. First, the former wife's contention that the pre-nuptial agreement should be set aside because it was a product of duress is unsubstantiated by the record. The trial court's decision to uphold the agreement is supported by competent, substantial evidence. A review of the record shows that the wife was represented by counsel of her choice and that the former wife's counsel actively participated in the negotiations of the agreement. Next, we find that the former wife's contention that the attorney-client privilege was violated when her counsel who represented her during the negotiations of the prenuptial agreement testified below is also without merit as questioning was limited to issues such as how she was retained, identification of "working drafts" of the agreement, and the process of the negotiations. See § 90.502(1)(c), Fla. Stat. (2002); Jenney v. Airdata Wiman, Inc., 846 So.2d 664 (Fla. 2d DCA 2003). The former wife's counsel was not asked about confidential communications that the wife had with her. Lastly, the former wife's contention that the hypothetical questions posed to the attorney who represented her during the negotiations of the prenuptial agreement were improper is without merit.
For these reasons, we affirm all the issues raised by the former wife in her cross-appeal.
Affirmed, in part; reversed, in part, and remanded.