594 So.2d 819 (1992)
Elizabeth B. MOON, Appellant,
v.
Milton J. MOON, Appellee.
No. 91-1528.
District Court of Appeal of Florida, First District.
February 19, 1992.
*820 Angela M. Ball, Perry, for appellant.
Edwin B. Browning, Jr. of Davis, Browning & Schnitker, Madison, for appellee.
KAHN, Judge.
The former wife, Elizabeth B. Moon, appeals a final judgment of dissolution of marriage, contending that the trial court erred in its treatment of the former husband's retirement account, erred in its valuation of certain marital property, and failed to distribute all the assets discussed at the final hearing. We affirm in part and reverse in part.
The parties were married on December 19, 1970. One child was born of the marriage in 1976. In 1980, the parties separated, and the minor child continued to live with the former wife. After a nine year separation, the former wife filed a petition for dissolution of marriage on March 30, 1989. At the final hearing, the parties disputed the value of the former husband's retirement account, what portion of the retirement account was a marital asset, and the value of the marital home. In the judgment here under review, the trial court set values for the retirement account and the marital home different from the values given by the parties and identified and distributed marital assets.
The major issue presented by this appeal concerns the valuation and distribution of the former husband's retirement account. In actuality this account is a profit sharing plan established by Mr. Moon's former employer, the Procter & Gamble Company. The plan has as its components cash, Procter & Gamble stock, and a guaranteed investment contract. Before moving to the question of value of the marital asset portion of the plan, we address the issue of date of valuation.
Before making a distribution of marital assets and liabilities, the trial court must first determine which assets and liabilities are marital and which are nonmarital. § 61.075, Fla. Stat. (1989). Section 61.075(4), Florida Statutes (1989) provides:
The date for determining marital assets and liabilities and the value of such assets and the amount of such liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage, unless the trial judge determines another date is just and equitable under the circumstances.
The trial court failed to establish a date in the instant case. At the final hearing, the trial court indicated that the portion of the retirement account in existence before the marriage was a nonmarital asset but did not indicate whether any portion of the retirement account acquired after the separation was a marital or nonmarital asset. Since the determination of whether any postseparation portion of the account is a marital or nonmarital asset is crucial to valuation, we must reverse.[1]
*821 The evidence of value contained in this record is both incomplete and disorganized. For instance, although this marriage lasted some twenty years, and Mr. Moon accumulated profit sharing assets during the entire length of the marriage, Mrs. Moon presented concrete documentation as to profit sharing account accumulations for only two years of the marriage, these being the last two years before the final hearing. The questions addressed by counsel to Mr. Moon at the final hearing indicate something of a void in Mrs. Moon's understanding of the growth of the profit sharing account. Some eight months after the final hearing, and six months after entry of the final judgment, counsel for the wife filed a motion requesting the trial court to require Mr. Moon to produce documentation for his retirement account. This court has been under the impression that discovery such as this generally takes place before the trial of the dissolution matter. In any event, section 61.075(1), Florida Statutes (1989), is fairly specific:
In a proceeding for dissolution of marriage, in addition to all other remedies available to a court to do equity between the parties, or in a proceeding for disposition of assets following a dissolution of marriage by a court which lacked jurisdiction over the absent spouse or lacked jurisdiction to dispose of the assets, the court shall set apart to each spouse that spouse's nonmarital assets and liabilities and shall distribute between the parties the marital assets and liabilities in such proportions as are equitable. ... (emphasis added)
In this case we can discern at least six arguable factors which should be considered prior to determining the marital and nonmarital aspects of Mr. Moon's account. For the guidance of the parties, we set these out:
1. The value of the profit sharing plan at the time of the marriage.
2. Increases in value of the profit sharing plan attributable solely to passive growth of these premarital assets.
3. The value of profit sharing funds acquired during the marriage which are attributable to marital efforts. See § 61.075(5). Fla. Stat. (1989).
4. The increase in value of profit sharing plan funds attributable solely to passive growth of assets which are themselves marital assets. See Bobb v. Bobb, 552 So.2d 334 (Fla. 4th DCA 1989).
5. Growth of premarital profit sharing plan assets attributable to marital efforts, if any, such as investment decisions. Depending upon the evidence, this category may or may not become a factor in the trial court's analysis. See Turner v. Turner, 529 So.2d 1138, 1141 (Fla. 1st DCA 1988) ("[T]he enhanced value of separately owned assets becomes a marital asset when that enhanced value is due to marital labor or funds. Once the threshold requirement of marital labor or funds has been established, increases in value attributable to marital labor, funds, inflation, and market conditions will all apply.")
6. The value of profit sharing plan funds acquired during the separation, and passive growth derived from such funds. See Temple v. Temple, 519 So.2d 1054 (Fla. 4th DCA 1988).
The scant documentary evidence in the record shows that the profit sharing plan had a value of about $292,000.00 at the conclusion of the fiscal year closest to the date Mrs. Moon filed her petition. Unfortunately, the final judgment provides no rationale for the trial court's determination that the marital asset portion of the account is $125,000.00, this being the figure selected by the trial court. Neither the transcript of the final hearing nor the final judgment indicate how the judge arrived at this figure. We must point out that the trial judge, by his oral pronouncement at the conclusion of the hearing, apparently recognized that he had not received the information necessary to arrive at an appropriate equitable distribution. He attempted to enlist the assistance of counsel:
And the Court feels that his stock that he owned at the time of the marriage should be treated as a non-marital asset and that it would be subject to retaining its identity through the tracing process, that the stock he accumulated after the *822 marriage up until the time of separation is clearly a marital asset and ought to be treated as such, and that the stock accumulated after the separation would be treated yet in a third  under a third consideration.
And until those arithmetic [sic] computations are made, I'm not sure we will have a final figure as to his retirement, unless you've already gone through this exercise.
Generally, whatever amount ultimately is  say the accumulation post-marriage/pre-separation is split  well, all of the marital assets are split 50/50.
We have the other considerations, such as the value of hers that hasn't been faced yet. And if you want to do that, we can attempt to do it today, or I'll be glad to the [sic] receive briefs from counsel about that, when you have a more leisurely approach to it.
Nothing appears in the record between the time the trial court made this statement at the conclusion of the final hearing and the entry of final judgment, some two months later.
Although the trial court has a broad range of discretion in valuing a retirement account, see Mollnow v. Mollnow, 530 So.2d 399 (Fla. 1st DCA 1988), and Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986), the trial court must arrive at an appropriate figure without merely resorting to estimation. Since the record contains only the figures for the fiscal years 1987-1988 and 1988-1989, the parties must on remand introduce further evidence. We wish to emphasize that the party alleging entitlement to an asset is generally required to introduce evidence which shows such entitlement. See Zaborowski v. Zaborowski, 547 So.2d 1296 (Fla. 5th DCA 1989). We recognize the burden placed upon trial courts by the equitable distribution statute, section 61.075, and by various cases requiring factual findings. See Tomlinson v. Tomlinson, 536 So.2d 296 (Fla. 1st DCA 1988); Turner v. Turner, 529 So.2d 1138 (Fla. 1st DCA 1988); Barrs v. Barrs, 505 So.2d 602 (Fla. 1st DCA 1987). The trial court cannot possibly fulfill this duty unless counsel for the spouse seeking equitable distribution places the appropriate information before the court. In other words, counsel must provide such data to the court as is required to support the segregation of marital from nonmarital assets and to support valuations that will withstand appellate review.
On remand, the court, utilizing the six categories set out above, must make findings as to marital and nonmarital assets. As to the portion of the account in existence prior to the marriage, the trial court must determine whether the value of these assets was enhanced by marital labor or funds. If so, then the enhanced value of the premarital asset becomes a marital asset and further enhancement in value of such marital asset due to inflation or market conditions will become a marital asset. Turner v. Turner, supra. If the value of the premarital assets was not enhanced by marital labor or funds, then the asset is not a marital asset subject to equitable distribution. Wright v. Wright, 505 So.2d 699 (Fla. 5th DCA 1987); Zaborowski, supra. If the trial court determines that any portion of the account acquired after the separation is a nonmarital asset, the court must trace the enhanced value of the marital asset portion through the separation. Likewise, if the court uses the separation date for determining and valuing any asset, the judgment must establish that such is "just and equitable under the circumstances." § 61.075(4), Fla. Stat. (1989).
The trial court did not err in the valuation of the marital home. Before determining the home's value, the trial court questioned the parties as to the location of the property and problems with the property. The value placed upon the marital home fell within the range of values asserted by the parties. The trial court was not bound to merely choose one of the estimates of value advanced by the parties. Since the former wife has not shown abuse of discretion, the trial court's valuation is affirmed. See Akers v. Akers, 582 So.2d 1212 (Fla. 1st DCA 1991).
*823 Because the error as to the former husband's retirement account affects the whole plan of distribution, we reverse the entire property distribution. The record indicates that some of the marital assets (other than the retirement account) distributed by the trial court were acquired after the separation. If the trial court determines that the date of separation is the date for determining marital and nonmarital assets, these assets might no longer be considered marital assets. We also direct the trial court to determine whether the former husband's truck and credit union account are marital assets which should be equitably distributed.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
ERVIN and WEBSTER, JJ., concur.
NOTES
[1] We cannot accept the assumption, characterized in Mr. Moon's brief as "apparent from the record," that the trial court properly factored in the long separation as a basis for disparate treatment. The final judgment does not hint at such a process.