632 So.2d 257 (1994)
Suzanne Lancaster PRIDGEON, Appellant,
v.
Thomas E. PRIDGEON, Jr., Appellee.
No. 93-2713.
District Court of Appeal of Florida, First District.
February 23, 1994.
*258 Sandra K. Haas of Airth, Sellers, Lewis & Prevatt, Live Oak, for appellant.
Conrad C. Bishop, Jr., Perry, for appellee.
KAHN, Judge.
Suzanne Pridgeon seeks review of several provisions contained in the final judgment which dissolved her eight-year marriage to Thomas Pridgeon, Jr. The Pridgeon marriage produced a son, age 5 at the time of the final judgment. We reverse and remand because the trial court did not follow the statutory guidelines in establishing child support for the son and failed to award Mrs. Pridgeon two items of nonmarital property. On remand we also direct the trial court to revisit the matter of summer visitation between Mrs. Pridgeon and her son. We find no abuse of discretion in the general custodial arrangement arrived at by the trial court, nor in the equitable distribution, save the two items that will be specifically addressed.
The dispute over primary residential parent and corresponding visitation between the Pridgeons and their son was particularly bitter. The trial court sorted through the testimony and reports of several mental health professionals and also observed the demeanor and testimony of Mr. and Mrs. Pridgeon. The judge then required shared parental responsibility and established the child's primary residence and visitation as follows:
The Petitioner/wife, SUZANNE LANCASTER PRIDGEON, shall be the primary residential parent of the minor child, BRIAN KEITH PRIDGEON, during the school year which shall be defined as that period that runs from five days prior to the commencement of the school year until five days after the end of the school year. During this time, the Respondent/husband shall have the right to visit with the minor child as follows:

*259 (a) Every other weekend from Friday evening at 6:00 p.m. until Sunday evening at 6:00 p.m.;
(b) Each party shall have one-half of the Christmas holiday period; during even-numbered years, the Respondent/husband shall have the minor child from the day school is out until 10:00 a.m. on Christmas Day and the Petitioner/wife shall have the minor child from 10:00 on Christmas Day through New Year's Day; and during odd-numbered years, the Petitioner/wife shall have the minor child from the day after school is out until 10:00 a.m. on Christmas Day and the Respondent/husband shall have the minor child from 10:00 a.m. on Christmas Day through New Year's Day;
(c) During odd-numbered years, the Petitioner/wife shall have the minor child during spring break, Labor Day and Martin Luther King, Jr.'s Birthday, including any weekend associated with those holidays, and the Respondent/husband shall have those same holiday periods during even-numbered years; and during even-numbered years, the Petitioner/wife shall have the minor child on Memorial Day, Thanksgiving Day and Veteran Day, including any weekend associated with those holidays, and the Respondent/husband shall have those same holiday periods during odd-numbered years;
(d) Irrespective of any other dates and times recited herein, the Respondent/husband shall have the minor child for Father's Day weekend and the Petitioner/wife shall have the minor child during Mother's Day weekend;
(e) The Respondent/husband shall be the primary residential parent of the minor child during the summer which shall be defined as the period from five days after the end of the school year until five days prior to the commencement of the next school year. The Petitioner/wife shall have the right to visit for a one week period beginning with the first Saturday in July and ending on the second Saturday in July, and liberal telephone access as described below.
Mr. Pridgeon owns a small motor sales and repair business in Mayo. Mrs. Pridgeon earned her R.N. degree in April 1986 and worked as a nurse until late 1991, when she had to leave her job to undergo cataract surgery. The decretal portion of the final judgment addresses child support as follows:
The Court finds that it would be equitable for the Respondent/husband to pay child support in the amount of $300 monthly for a period of six months; however, the Court directs that the child support be amortized over the full nine months of the school year. Therefore, Respondent/husband shall pay regular child support in the amount of $200 per month, on the first day of each of the nine months of the school year, commencing September 1, each year and running through and including May 1. Regular child support payments shall commence September 1, 1993. The Respondent/husband will not be required to pay child support the three months he is the residential parent, and the Petitioner/wife will be given credit for paying child support for the three summer months.
The trial court found as a fact that "the petitioner/wife is an able bodied woman with an R.N. degree who is well able to support herself." The court made no findings, however, concerning Mrs. Pridgeon's income, either actual or imputed. Mr. Pridgeon filed with the court a "Child Support Guideline Calculation," which imputed income to Mrs. Pridgeon in an amount of $731 a month. Nothing in the final judgment elucidates the trial court's declaration that equity would require Mr. Pridgeon to pay child support for six months; however, such support would be amortized over "the full nine months of the school year."
Before the marriage, Mrs. Pridgeon owned a 20 cubic foot refrigerator and a 22 cubic foot freezer. The refrigerator is now located at Mr. Pridgeon's home; the freezer rests on "husband's mother's porch." Mr. Pridgeon does not dispute his former wife's ownership of these two appliances before the marriage, nor does he dispute the trial court's failure to address ownership and equitable distribution of these particular assets. Rather, Mr. Pridgeon argues that his former wife has failed to prove that he "refuses to return two items to *260 her," and generally that the matter is too trivial to be reviewed by this court.
We begin with the household appliances. Section 61.075(1), Florida Statutes (1991), requires the court to "set apart to each spouse that spouse's nonmarital assets and liabilities... ." The final judgment in a contested case must clearly identify "nonmarital assets and ownership interests." § 61.075(3)(a), Fla. Stat. (1991). Since the statute makes no exception for either appliances or assets deemed by one spouse to be not worthy of taking up the court's time, we find that these dictates should have been followed, and on remand the court is directed to award the refrigerator and freezer to Mrs. Pridgeon, since the evidence is undisputed that these items are nonmarital.
In establishing the child support guidelines, section 61.30, Florida Statutes (1991), the legislature has spoken to the presumptive amount the trier of fact shall order as child support. § 61.30(1)(a), Fla. Stat. (1991). However, the guidelines are not inflexible, and allow child support in an amount different from the guideline amount upon a written finding, or a specific finding on the record, explaining why ordering payment of such guideline amount would be unjust or inappropriate. Id.
In the present case, one might surmise that the trial court (1) imputed income to Mrs. Pridgeon, and (2) wished to make some sort of equitable arrangement to compensate Mr. Pridgeon for the time in which the child will be residing with his father as primary residential parent. In our view, however, neither of these assumptions adequately explains the amount of child support awarded, or the six-month/nine-month payment formula. More to the point, we may not properly assume imputed income, since the statute provides for income to be imputed "to an unemployed or underemployed parent when such employment or underemployment is found to be voluntary on that parent's part, absent physical or mental incapacity or other circumstances over which the parent has no control." § 61.30(2)(b), Fla. Stat. (1991). Whether Mrs. Pridgeon, who admitted that she has earning potential as a nurse, was, at the time of the final hearing, unemployed or underemployed voluntarily must be passed upon in the first instance by the trial court, after taking into account such matters as her employment history and current medical status. Since no consideration of these matters appears in the final judgment, we need not determine whether income may be properly imputed to her on remand.
The trial court apparently wished to relieve Mr. Pridgeon of any obligation to pay child support during the summer. Section 61.30(10)(g), Florida Statutes (1991), provides that the child support award may be adjusted because of "the particular shared parental arrangement, such as where the secondary residential parent spends a great deal of time with the children thereby reducing the financial expenditures incurred by the primary residential parent."[1] Thus, if the child's extended stays with his father have the effect of reducing Mrs. Pridgeon's financial expenditures, such may be considered in making an award of child support. It would appear unlikely, however, that her financial expenditures would be reduced to nothing. This is particularly true in light of the fact that the child returns to Mrs. Pridgeon just before the beginning of the school year (yet prior to the revival of child support), at which time he must presumably be outfitted with clothes and school supplies.
The statutory provisions concerning imputed income and adjustments "for a particular shared parental arrangement" offer flexibility to the trial court, but since ultimately the welfare of a small child is at stake, the court's utilization of these provisions should be elucidated. See Edwards v. Sanders, 622 So.2d 587 (Fla. 1st DCA 1993); Neal v. Meek, 591 So.2d 1044 (Fla. 1st DCA 1991).[2]
*261 The trial court decided that the minor's best interest would be served if Mr. Pridgeon acts as primary residential parent during the summer. This decision is within the broad discretion afforded trial judges in such matters. Boatright v. Boatright, 490 So.2d 1269 (Fla. 1st DCA 1986). While the final judgment affords Mrs. Pridgeon the right to visit with her son during the first week in July, it does not address the question of weekend visitation. Mr. Pridgeon, on the other hand, is entitled to visitation every other weekend (to include two overnights) during the entire primary residential period allocated to Mrs. Pridgeon. We are unable to discern why Mrs. Pridgeon should not likewise have the benefit of at least limited weekend visitation during the summer. We have not overlooked her right to one week of visitation in early July. This week notwithstanding, however, the effect of the final judgment would be to return the child to Mrs. Pridgeon after five to seven weeks of no personal contact between mother and child. Under the schedule devised by the trial judge, Mrs. Pridgeon would have three weekdays and one weekend during which to reacclimate the child to her presence and her home, and to prepare him to begin the school year. While we by no means intend to articulate a standard that would require trial judges to provide reasons for any schedule of visitation, we find that under the circumstances presented by this case, the court must, on remand, either articulate why it is in this child's best interest to not have any weekend visitation, or, in the alternative, to provide some means of meaningful personal contact between Mrs. Pridgeon and her son in addition to the one week already set out.
AFFIRMED in part, REVERSED in part, and REMANDED.
JOANOS and WEBSTER, JJ., concur.
NOTES
[1] In 1993, the legislature added the following to section 61.30(11)(g) (section renumbered): "If a child has visitation with a noncustodial parent for more than 28 consecutive days the court may reduce the amount of support paid to the custodial parent during the time of visitation not to exceed 50 percent of the amount awarded."
[2] The requirement of fact finding in domestic cases, which we do not intend to expand by this opinion, has not, it seems, been a favorite of many trial judges. In the equitable distribution statute, Section 61.075(3)(d), Florida Statutes (1991), we find the requirement mandated not only for the benefit of the reviewing court, but also "to advise the parties ... of the trial court's rationale ..." Such is consistent with a public policy to lend a sense of reasoned finality to decrees in this most acrimonious area of litigation.