672 So.2d 624 (1996)
Todd ADAMSON, Appellant/Cross-Appellee
v.
Sandra Lynn CHAVIS, Appellee/Cross-Appellant.
No. 95-3912.
District Court of Appeal of Florida, First District.
April 26, 1996.
*625 Douglas H. Pike, Atlanta, and Sandra J. Mathis of Rogers, Towers, Bailey, Jones & Gay, Jacksonville, for Appellant/Cross-Appellee.
Nancy N. Nowlis, and Barry Sinoff, Jacksonville, for Appellee/Cross-Appellant.
PER CURIAM.
The father in this appeal from a final judgment of paternity challenges the court's adoption of the mother's proposed visitation schedule. We find merit in the father's claim regarding the limited visitation schedule and therefore reverse on that issue. We affirm without further discussion, however, the issue raised on cross-appeal challenging that part of the final order which changes the child's last name to that of appellant.
The mother, who currently resides in Jacksonville, filed a paternity action on March 10, 1995, against appellant, the father of their child born on October 6, 1994. The suit requested a determination of paternity, establishment of child support and contribution for medical expenses, a determination of shared parental responsibility with the mother's home as primary physical residence of the child, and establishment of a visitation schedule for the father. In his answer, the father, who lives in Ohio, acknowledged paternity, sought joint custody, and requested visitation not only for himself, but also for the child's paternal grandparents, who live in Georgia. The father has always admitted paternity and provided financial support for the child, including paying for part of the child's medical expenses. Both parties submitted proposed visitation schedules.
The court, at the hearing held on September 22, 1995, stated that the final order would not adopt the visitation schedule of either party, but would provide a compromise schedule. The final order, however, adopted the mother's proposed visitation schedule without alteration. In the final judgment, the court stated that no overnight visitation would be permitted to the father for some time because an eleven-month-old child has "certain emotional needs and cognitive limitations" that mitigate against it. The court recognized that the father and paternal grandparents clearly desired to establish a relationship with the little girl as soon as possible, but stated that because they lived so far away this would be difficult while the child is an infant and preschooler.
The visitation schedule initially provides for a few hours of visitation on alternating weekends in Jacksonville until the child is two.[1] The father is permitted a single overnight visit each month when the child is two (from Saturday afternoon to Sunday afternoon). After the child turns three, the father *626 may take the child out of Jacksonville on his two monthly opportunities for an overnight visit. The father is not permitted a full weekend visit, i.e., Friday afternoon until Monday morning, until the child is in kindergarten, and he is not permitted any extended visitation with the child until the summer before she enters first grade. The visitation schedule makes no provision for visitation by the paternal grandparents.
"[I]t is the responsibility of the trial court ... to establish a visitation schedule in compliance with the evidence and in accordance with Florida law." Wattles v. Wattles, 631 So.2d 349, 350 (Fla. 5th DCA 1994). Section 61.13(2)(b)1., Florida Statutes (1994), provides that
[t]he court shall determine all matters relating to custody of each minor child of the parties in accordance with the best interests of the child and in accordance with the Uniform Child Custody Jurisdiction Act. It is the public policy of this state to assure that each minor child has frequent and continuing contact with both parents after the parents separate or the marriage of the parties is dissolved and to encourage parents to share the rights and responsibilities of childrearing. After considering all relevant facts, the father of the child shall be given the same consideration as the mother in determining the primary residence of a child irrespective of the age or sex of the child.
This statute also controls custody disputes between parents who never married. In the Interest of S.M.H., 531 So.2d 228 (Fla. 1st DCA 1988); Collinsworth v. O'Connell, 508 So.2d 744 (Fla. 1st DCA 1987).
The above-cited statute abolished the "tender years doctrine," which gave preference to the mother of a child of tender years in custody issues. Ketola v. Ketola, 636 So.2d 850 (Fla. 1st DCA 1994). This and other courts also have rejected the use of the tender years doctrine in determining visitation rights. The trial court in Kerr v. Kerr, 486 So.2d 708 (Fla. 5th DCA 1986), had refused overnight visitation of a child with his father because of the child's youth. The Fifth District reversed and stated that there was no evidence that the father was unable to care for his child overnight and he was certainly willing to do so. Id. This court also has reversed a trial court order that restricted a father's visitation with his son based on the child's youth. Saucier v. Willis, 656 So.2d 252 (Fla. 1st DCA 1995). The trial court in the instant case found both parents to be fit and recognized both at hearing and in the final judgment that the distance between Florida and Ohio would be a daunting factor for the father in exercising any visitation at all. The visitation schedule adopted by the court, however, in no way takes this into account. The court's order requires the father to travel from Ohio for sharply limited visitation with his child in Jacksonville. As stated previously, the father cannot have a single overnight visit with his child until she is two years old, and he is only allowed to take her out of Jacksonville for a single night when she is halfway through her kindergarten year. The father under the circumstances and visitation schedule of this case must wait several years until he is permitted visitation that affords him any meaningful opportunity to establish a relationship with his child.[2] The absence of opportunities for overnight and extended visits and for visitation other than in Jacksonville for many years is based expressly on the child's youth and implicitly on the idea that the child is too young to be apart from her mother. This application of the abolished tender years doctrine is error.
The decision to impose limitations on visitation, moreover, must be supported by some evidence in the record showing that the restrictions are necessary. Kent v. Burdick, 591 So.2d 994 (Fla. 1st DCA 1991) (citing Goodman v. Goodman, 571 So.2d 23 (Fla. 2d DCA 1990)). The instant court's determination to limit visitation was based solely on the youth of the child. There was no testimony regarding any need to restrict the father's opportunity for meaningful visitation with his child. The final order in fact states that the *627 father "has admitted paternity and stands ready to meet his responsibilities and obligations as a father toward the parties' minor child."
Accordingly, the visitation schedule is reversed and remanded. The issue raised on cross-appeal is affirmed.
Affirmed in part and reversed in part.
ERVIN and MINER, JJ., concur.
WEBSTER, J., concurs in part and dissents in part with written opinion.
WEBSTER, Judge, concurring in part, and dissenting in part.
Because I can find nothing in the record to suggest that the trial court abused its discretion when it directed that the last name of the parties' child be changed to correspond to that of the father, I concur in the decision to affirm that provision of the final judgment of paternity. However, because I am, likewise, unable to find anything in the record to suggest that the visitation schedule adopted by the trial court constituted an abuse of discretion, I would affirm that provision, as well. Accordingly, I dissent from that portion of the majority's opinion which reverses that visitation schedule.
The record reflects that the parties' daughter was one year old when the final judgment was entered. The mother was living with her parents, in Jacksonville. The father was living in Wooster, Ohio. He had no family in the Jacksonville area. His parents resided in Atlanta.
The father (who was 24 years old and had no experience parenting an infant) had proposed that, in October 1995 (shortly before the child's first birthday), he have visitation every other week, of eight hours per day for three consecutive days. Such visitation was to be at a place of his choice, anywhere within a 50-mile radius of Jacksonville. He proposed that, in November and December 1995, he have the child every other week, from 9:00 a.m. on Sunday to 5:00 p.m. on Tuesday, again at a place of his choice anywhere within a 50-mile radius of Jacksonville. Commencing in January 1996 (shortly before the child reached age fifteen months), the father proposed that he have the child every other week, without territorial limitation, until the child reached majority. (In essence, the father was proposing a joint, or split, custody arrangement.) The father also proposed that he have the child for the month of July each year until the child's twelfth birthday, at which time visitation would be increased to six consecutive weeks each summer, and extensive holiday visitation.
In its final judgment, the trial court noted that, because the father lived in Ohio, meaningful visitation during the child's infancy and preschool years would be difficult. Because of the significant distance involved between the parties' residences, and the child's "emotional needs and cognitive limitations," the trial court concluded that it would not be in the child's best interest to adopt a visitation schedule such as that proposed by the father. However, the schedule adopted by the trial court did permit the following visitation: until the child reached age twenty-four months, every other Saturday and Sunday, for four hours each day, in Jacksonville; from age twenty-four months to age thirty-six months, four hours on Saturday and four hours on Sunday for one weekend each month, and one overnight visitation one weekend each month, in Jacksonville; from age thirty-six months to January first of the child's kindergarten-school year, four hours every other Saturday, and one overnight visitation every other weekend, at a location of the father's choice; and from January first of the child's kindergarten year to age eighteen, visitation every other weekend, from 6:00 p.m. on Friday to 9:00 a.m. on Monday, at a location of the father's choice. The schedule also provided for extensive summer visitation, commencing with three blocks of five days, each separated by at least seven days, during the summer after the child's kindergarten year; and followed by two blocks of ten days, each separated by at least seven days, during the summers after the child's first through third-grade years; and twenty-one continuous days each summer, commencing the summer after the child's fourth-grade year; all at a location of the father's choice. The father was also afforded similarly escalating holiday visitation. In addition, the *628 trial court indicated that it would be willing to revisit its decision should there be a change in circumstances, such as a move by the father or his parents to the Jacksonville area. On appeal, the father continues to argue for the schedule proposed by him in the trial court.
As the majority implicitly acknowledges, the extent and terms of parental visitation are to be determined according to what is perceived to be in the best interest of the child. § 61.13(2)(b)1, Fla.Stat. (1995); Pridgeon v. Pridgeon, 632 So.2d 257 (Fla. 1st DCA 1994). Not infrequently, trial courts are called upon to predict the effects upon a child of exposure to proposed conditions. Commander v. Commander, 493 So.2d 530 (Fla. 1st DCA), review denied, 501 So.2d 1281 (Fla.1986). It seems to me that is precisely what occurred here. The trial court concluded that the likely effects of permitting the visitation requested by the father would not be in the best interest of the child, considering her age and the significant travel necessarily implicated by that request. I see nothing to suggest that this decision amounted to an abuse of discretion. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980) ("If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion"). Moreover, because trial courts are clearly better situated to render such difficult decisions, appellate courts should be particularly loath to meddle with those decisions once made, substituting their collective opinion for that of the trier of fact. E.g., Dinkel v. Dinkel, 322 So.2d 22 (Fla.1975); In re Gregory, 313 So.2d 735 (Fla.1975); Lane v. Lane, 599 So.2d 218 (Fla. 4th DCA 1992); Barnhill v. Barnhill, 353 So.2d 923 (Fla. 4th DCA 1978).
The majority asserts that the trial court's decision "to limit visitation was based solely on the youth of the child." Ante, at 626-27. It then concludes that "[t]his application of the abolished tender years doctrine is error." Ante, at 626. I take issue with the assertion that the decision was based "solely on the youth of the child." Rather, it seems to me relatively clear that the decision was based upon the child's age, coupled with the significant distances which the child would necessarily have to travel were the father's proposed visitation schedule implemented.
Moreover, I fail to see how the abrogation of the "tender years doctrine" has anything to do with this case. Section 61.13(2)(b)1, Florida Statutes (1995), upon which the majority relies, states only that, "[a]fter considering all relevant facts, the father of the child shall be given the same consideration as the mother in determining the primary residence of a child irrespective of the age or sex of the child." (Emphasis added.) It does not say that the age and sex of the child may not be taken into account when determining the extent and terms of visitation by the parent who is not awarded the primary residence of the child.
Traditionally, the "tender years doctrine" was a consideration only with regard to custody decisions. E.g., Dinkel v. Dinkel, 322 So.2d 22, 24 (Fla.1975) (notwithstanding section 61.13(2), mandating "equal consideration of the spouses in the award of custody, it is still the law in this State that, other essential factors being equal, the mother of the infant of tender years should receive prime consideration for custody"). We have previously held that subsequent amendments to section 61.13(2)(b)1 evidenced a legislative intent to abolish the "tender years doctrine" in cases where both parents seek to be awarded the primary residence ("custody") of a child. Ketola v. Ketola, 636 So.2d 850 (Fla. 1st DCA), review dismissed, 649 So.2d 233 (Fla.1994). I find no fault in such a conclusion. However, I do find fault with the majority's reading of section 61.13(2)(b)1 as prohibiting trial courts from giving any weight to a child's age, regardless of the circumstances, when fashioning a visitation schedule for the non-custodial parent. To the extent that Saucier v. Willis, 656 So.2d 252 (Fla. 1st DCA 1995), and Kerr v. Kerr, 486 So.2d 708 (Fla. 5th DCA 1986), can be read as standing for such a proposition, I note that neither decision offers any justification for such an expansive reading of the critical language in section 61.13(2)(b)1, and I can think of none.
In short, it is apparent to me that the trial court based its decision regarding the visitation *629 schedule on its conclusion that it would not be in the child's best interest, given her age, to be separated from the primary residential parent for substantial periods, and by substantial distances requiring considerable travel. Instead, it concluded that visitation between the non-custodial parent and the child should be increased gradually, as the child became older and better able emotionally and cognitively to cope with the situation. I am unable to say that this decision constitutes an abuse of discretion. On the contrary, it seems to me that, given the circumstances, the trial court's decision constitutes a fair accommodation of the competing interests involved. Accordingly, I would affirm.
NOTES
[1] The mother stipulated at the hearing that because the father is an entry-level assistant college football and track coach in Wooster, Ohio, and cannot visit on weekends during those sport seasons, that visitation could be during the week. This stipulation does not appear in the order.
[2] We also note that the visitation schedule's silence on visitation for the paternal grandparents apparently means that they may only see their grandchild when their son is able to visit. No provision is made that they may use their son's visitation times when he cannot.