852 So.2d 343 (2003)
Paula Marie GAETANI-SLADE, Appellant,
v.
Michael Stephen SLADE, Appellee.
No. 1D02-2958.
District Court of Appeal of Florida, First District.
August 14, 2003.
*344 Pamela A. Schneider, of Wershow and Schneider, P.A., Gainesville, for Appellant.
No Appearance, for Appellee.
BROWNING, J.
Paula Marie Gaetani-Slade (Appellant) appeals portions of an amended final judgment dissolving her marriage to Michael Stephen Slade (Appellee). Appellant contends that the trial court erred in failing to acknowledge and value Appellee's retirement benefits in its decree and abused its discretion in several material respects relating also to Appellee's non-marital real estate, to the denial of attorney's fees and costs, and to the classification and distribution of certain tangible personal property, including an award to her of $5,000.00 in furniture and furnishings that she, in fact, did not have. Those portions of the amended final judgment dissolving the parties' marriage, designating Appellant as the primary residential parent, and awarding child support and related items are affirmed. However, concluding that the amended final judgment lacks sufficient factual findings, as required by section 61.075(3), Florida Statutes (2000), to allow meaningful appellate review of the issues raised by Appellant, we reverse the equitable distribution scheme and the denial of attorney's fees and costs and remand with instructions to the trial court to set out findings of fact to support its rulings. The trial court may receive any additional evidence deemed necessary for the proper resolution of the issues.
After living together for about two years, the parties were married in July 1993. One child, a daughter, was born in February 1997. At approximately the same time as the parties' separation in June 2000, Appellant petitioned to dissolve the marriage. She sought, inter alia, alimony, primary residential custody of the child, child support, an equitable distribution of assets and liabilities, attorney's fees and costs, and certain of her own non-marital assets. Appellee answered and counter-petitioned seeking, inter alia, child custody and support, certain personal and real property (including the marital residence) alleged to be non-marital, and an equitable distribution of assets and liabilities.
The amended final judgment designated Appellant as the primary residential parent and awarded frequent and liberal visitation to Appellee. The court designated 11-1/2 acres of real property (including the marital residence and a barn) as nonmarital, with a $175,000.00 value, and awarded it to Appellee, subject to a $60,000.00 mortgage. The division of marital assets and liabilities (furniture/furnishings from the marital home, two motor vehicles, a stock trailer, a tractor, livestock, a VALIC loan, Sears debt, and Appellant's personal family property) was admittedly unequal, with the court noting that Appellee is responsible for "significant net debt." Alimony was denied based on the relatively short duration (8 years) of the marriage and the finding that Appellant is able to maintain the standard of living established during the marriage. Under the child-support guidelines, the parties' respective net monthly incomes were found to be $2,678.00 (Appellee) and $1,383.00 (Appellant). Appellee was ordered to pay child support in the amount of $550.00 monthly beginning July 1, 2002. He was ordered to maintain health insurance coverage for the parties' child and to pay her medical, dental, and prescription drug costs without any contribution from Appellant. The parties were ordered to pay his or her own attorney's fees and costs.

Appellee's Retirement Benefits
At the dissolution trial, Appellee testified that for the duration of his employment *345 there, he had had a retirement plan at Shands, where he worked as a construction foreman. Section 61.075(5)(a)4., Florida Statutes (2000), defines "marital assets and liabilities" to include "[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs." Such vested and nonvested benefits, rights, and funds accrued during the marriage in retirement and other such plans and programs "are marital assets subject to equitable distribution." § 61.076(1), Fla. Stat. (2000); Crockett v. Crockett, 708 So.2d 329 (Fla. 1st DCA 1998). Appellant sought one-half of that portion of Appellee's retirement that was accumulated during the marriage.
The parties in a dissolution of marriage action have an obligation "to present evidence of the existence and value of marital assets and the existence and balances due of marital debts in order for the court to include them in the final judgment." Mobley v. Mobley, 724 So.2d 697, 697 (Fla. 5th DCA 1999). Toward that end, Florida Family Law Rule of Procedure 12.285(d)(10) states, in pertinent part:
(d) Parties' Disclosure Requirements for Initial or Supplemental Proceedings. A party shall serve the following documents in any proceeding for an initial or supplemental request for permanent financial relief, including, but not limited to, a request for ... equitable distribution of assets or debts ...:
* * *
(10) The most recent statement for any profit sharing, retirement, deferred compensation, or pension plan ... in which the party is a participant or alternate payee and the summary plan description for any retirement, profit sharing, or pension plan in which the party is a participant or an alternate payee. (The summary plan description must be furnished to the party on request by the plan administrator as required by 29 U.S.C. § 1024(b)(4).)
"The burden of proof is on the spouse who wishes to show that an asset or liability acquired during the marriage is not a marital asset." Deas v. Deas, 592 So.2d 1221, 1222 (Fla. 1st DCA 1992). At the trial, Appellant's attorney noted that Appellee would have to provide sufficient information about Appellee's retirement plan to allow the trial court to valuate it. Appellee's October 19, 2000, affidavit, filed on November 13, 2000, did not include his retirement plan as an asset. Nothing in the record before us indicates that Appellee complied with the disclosure requirements of Rule 12.285(d)(10). Appellant contends that the trial court reversibly erred in failing to identify Appellee's retirement benefits as a marital or non-marital asset, to valuate the retirement, and to account for it in any manner in the equitable distribution scheme. We agree that this omission compels reversal. § 61.075(3), Fla. Stat. (2000) (providing, in any contested dissolution action where no stipulation and agreement has been entered and filed, that any distribution of marital assets or marital liabilities must be supported by factual findings based on competent substantial evidence referring to enumerated factors in statutory subsection (1)); Moon v. Moon, 594 So.2d 819 (Fla. 1st DCA 1992). Statutory sub-subsections (3)(a) and (b) provide that "[t]he distribution of all marital assets and marital liabilities, whether equal or unequal, shall include specific factual findings" regarding "[c]lear identification of nonmarital assets and ownership interests" and "[i]dentification of marital assets, including the individual valuation of significant assets, and designation of which spouse shall *346 be entitled to each asset." The trial court is instructed on remand to make these required findings regarding Appellee's retirement benefits and to explain the distribution thereof in accordance with the statutory requirements and the guidelines set forth in Moon, 594 So.2d at 821.

Marital Enhancement of Appellee's Nonmarital Real Estate
Next, Appellant asserts that the trial court abused its discretion by finding there was no marital enhancement of Appellee's nonmarital real estate, rendering the property not subject to equitable distribution. § 61.075(1), Fla. Stat. (2000). Section 61.075(5)(a)2., Florida Statutes (2000), defines "marital assets and liabilities" to include "[t]he enhancement in value and appreciation of nonmarital assets resulting either from the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds or other forms of marital assets, or both." See Pleas v. Pleas, 652 So.2d 435 (Fla. 1st DCA 1995). Before the parties' marriage, Appellee owned about 11-1/2 acres, including a house and a barn. He testified that the house became the marital residence. There was conflicting evidence concerning when the house, an eight-stall barn, and fencing were completed; to what extent renovations, additions, and other improvements were made to the property; and how much of whose money was used to complete the projects. At the very least, the testimony of Appellee and his witnesses established that extensive renovations of the home occurred during the marriage. Appellant testified that she had contributed "some monies" to the building projects when she first moved in, before the marriage; and that $20,000.00 received from her family after the parties married was put in the bank and used to improve the marital home. On the other hand, Appellee testified that the house and barn were completely built and the fencing installed by the time he and Appellant began living together before their marriage. The appraised value of the house and acreage was $47,500.00 when the parties married. Assuming that figure represented about 80% of the actual value, Appellant argued that the real value of the entire property then was about $60,000.00. The parties agreed that as of the petition filing date, the property was worth $175,000.00. In 1993, the parties obligated themselves to pay a home mortgage in the amount of $73,733.77, the balance of which was $60,000.00 by the time the petition for dissolution was filed.
Marital funds used to pay down the mortgage and to enhance the value of nonmarital property create a marital interest in the property that is subject to equitable distribution. Perrin v. Perrin, 795 So.2d 1023, 1024 (Fla. 2d DCA 2001); Dyson v. Dyson, 597 So.2d 320, 324 (Fla. 1st DCA 1992). Appellee testified that the money used to make mortgage payments during the marriage came from his salary and overtime earnings, not from wedding gifts or other sources. In contrast, Appellant testified that she had contributed some monies, about $1,200.00, toward payment of the mortgage before the marriage. She testified also that she had taken out a $3,500.00 loan against the VALIC account to put into the marital residence.
In its amended final judgment, the trial court found there was "no evidence presented" from which it could determine whether any appreciation in the property's value occurred and, if so, whether it was due to Appellant's contributions. Appellant contends that the diminution in the mortgage balance, along with the significant home and barn improvements, are competent substantial evidence that the value of Appellee's nonmarital real estate was enhanced by the expenditure of marital *347 funds, marital labor, and her nonmarital funds. She asserts also that the amount of that enhancement from other sources cannot be ascertained. Citing Jahnke v. Jahnke, 804 So.2d 513 (Fla. 3d DCA 2001), Appellant notes that once a non-owner spouse establishes that marital labor or funds were used to improve a home that was nonmarital, the owner-spouse has the burden to show which parts are exempt. See Adkins v. Adkins, 650 So.2d 61, 68 (Fla. 3d DCA 1994) (on reh'g). If the trial court intended to reject Appellant's testimony regarding her alleged contributions to the improvement of the real property or to the mortgage payments, then it must make sufficient findings of fact to satisfy the equitable distribution statute and to permit meaningful appellate review. Otherwise, Appellant's testimony constituted competent substantial evidence, so as to shift the burden to Appellee, according to Jahnke and Adkins, to show the amount of the enhanced value attributable to passive appreciation. Appellee failed to assume that burden. Under either scenario, additional findings are needed, and the trial may consider any additional evidence that will allow it to render such findings.

Attorney's Fees and Costs
In her petition for dissolution, Appellant requested attorney's fees and costs. In pertinent part, section 61.16, Florida Statutes (2000), states that "[t]he court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter." "[A] trial court cannot decide the issue of attorney's fees without findings as to one spouse's ability to pay fees and the other spouse's need to have fees paid." Perrin, 795 So.2d at 1024; Hammond v. Hammond, 801 So.2d 988 (Fla. 1st DCA 2001).
In a November 2000 order for temporary relief, a different trial judge ordered Appellee to pay a portion ($563.05) of Appellant's attorney's fees and costs. In the amended final judgment, without making any supporting factual findings regarding the parties' respective financial need and ability to pay attorney's fees and costs, the trial court held each party responsible for payment of his or her own attorney's fees and costs. Appellant contends that given the significant disparity in the parties' incomes, the denial of fees and costs without findings of fact constitutes reversible error. See id. at 989.
In his October 2000 financial affidavit, Appellee listed his 1999 gross income as $42,500.00. He reported his monthly income as $2,597.24 (gross) and $1,807.85 (net). He listed total monthly expenses as $2,732.00, resulting in a $924.15 monthly deficit. He listed total net worth as $123,750.00 ($200,000.00 in assets minus $76,250.00 in liabilities). Appellant's May 2002 amended financial affidavit listed her occupation as a broker with Bankers Life & Casualty and reported her annual income as $25,000.00. She reported monthly income as $2,083.33 (gross) and $1,576.70 (net). She listed total monthly expenses as $1,850.00, resulting in a $273.30 monthly deficit. She listed total net worth of $135,445.00 ($217,125.00 in assets minus $81,680.00 in liabilities). Because the basis for denying Appellant's request for attorney's fees and costs is not self-evident from the record, we reverse the denial of fees and costs and direct the trial court to make findings to explain its ruling. Hyatt v. Hyatt, 672 So.2d 74 (Fla. 1st DCA 1996); Hammond, 801 So.2d at 989.

Classification and Distribution of Certain Nonmarital Tangible Personal Property
Section 61.075(1), Florida Statutes (2000), requires a trial court to "set apart to each spouse that spouse's nonmarital *348 assets and liabilities." Pridgeon v. Pridgeon, 632 So.2d 257, 260 (Fla. 1st DCA 1994). Appellant testified without contradiction that when she left the marital residence, she took none of Appellee's things and only the nonmarital antique furniture and jewelry she had inherited from her grandmother, plus certain marital items (including an entertainment center) worth a total of approximately $2,000.00. She presented unrefuted testimony that what she had left in the marital home were marital items (including a bedroom set) worth $4,000.00-$5,000.00. Appellant testified that she had asked for, but left at the residence, certain other personal belongings of hers, including her wedding dress, some Disney figurines, and her grandmother's heirloom mirror. Appellee testified he had no problem giving Appellant these personal items. The amended final judgment designated "miscellaneous" items, including the wedding dress, figurines, and mirror, as "marital assets" and placed an "X" in Appellant's column of distributed items but did not give them a value. The court also gave a $10,000.00 value to unnamed "furniture and furnishings" from the marital residence purportedly already in Appellant's or Appellee's possession, and a 50-50 division was made. To the extent that the trial court considered Appellant's nonmarital tangible personal property as marital assets subject to an equitable distribution, it erred. Id. at 259. Also, the attribution of $5,000.00 of marital assets to Appellant in the form of furniture and furnishings supposedly already in her possession is unsupported by competent substantial evidence and constitutes an abuse of discretion. Because the errors set forth herein affect the entire distribution plan, we reverse the entire property distribution scheme. Moon, 594 So.2d at 823.
We AFFIRM the dissolution of the parties' marriage, the designation of Appellant as the primary residential parent, and the award of child support and related items, REVERSE the equitable distribution scheme and the denial of attorney's fees and costs, and REMAND with directions to the trial court to make appropriate findings of fact to explain its rulings.
VAN NORTWICK, J., CONCURS; KAHN, J., CONCURS IN PART AND DISSENTS IN PART WITH OPINION.
KAHN, J., concurring in part and dissenting in part.
I agree with and concur in the majority's decision to return this matter to the trial court for further proceedings with regard to an appropriate equitable distribution of marital assets. More than likely, as a result of our remand, appellant will gain entitlement to a share of appellee's retirement plan because, not only did the trial court fail to distribute the marital portion of this plan, it failed to even identify any portion of the plan as a marital asset. I am unpersuaded, however, that the trial court abused its discretion by requiring the parties to bear their own expenses for attorney's fees. According, I respectfully dissent from that portion of the opinion that reverses and remands for further proceedings on the appellant's entitlement to attorney's fees.